Matter of Super (2023 NY Slip Op 01682)

Matter of Super

2023 NY Slip Op 01682

Decided on March 29, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 29, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
VALERIE BRATHWAITE NELSON, JJ.

2020-08854 

[*1]In the Matter of Steven Ira Super, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Steven Ira Super, respondent. (Attorney Registration No. 2891752)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by the service and filing of a notice of petition and a verified petition, both dated June 10, 2021. By decision and order on application of this Court dated August 24, 2021, the issues raised were referred to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on April 20, 1998.

Catherine A. Sheridan, Hauppauge, NY (Nancy B. Gabriel of counsel), for petitioner.
Foley Griffin, LLP, Garden City, NY (Thomas J. Foley of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated June 10, 2021, containing three charges of professional misconduct. The respondent served and filed an answer dated June 30, 2021. The Grievance Committee served and filed a statement of disputed and undisputed facts dated July 6, 2021, to which the respondent filed a response. By decision and order on application of this Court dated August 24, 2021, pursuant to 22 NYCRR 1240.8(b)(1), the issues raised in the statement of disputed and undisputed facts, and the response thereto, as well as any evidence in mitigation and/or aggravation, were referred to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. After a hearing on October 25, 2021, the Special Referee submitted a report in which he sustained all charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent has filed an affirmation in response wherein he does not challenge the Special Referee's findings and requests that the Court impose a sanction no greater than public censure in view of the mitigating factors presented.
The Petition 
Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional [*2]Conduct (22 NYCRR 1200.0), as follows:
In or about April 2016, the respondent maintained two escrow accounts at Citibank, to wit: account number ending in 2977, titled "Steven Super Associates PC Attorney Escrow Account" (hereinafter the master escrow account), which consisted of a master account and approximately 60 to 70 subaccounts that were maintained for individual clients, and account number ending in 2993, titled "Super Associates PC IOLA Attorney Trust Account" (hereinafter the IOLA account), which the respondent used primarily for client Bronx Chiropractic and to conduct wire transfers.
On April 7, 2016, the balance in the master escrow account included funds entrusted to the respondent as a fiduciary in connection with client matters. On April 8, 2016, the respondent transferred $33,267.45 from a subaccount maintained for client JTK Chiropractic (hereinafter JTK) to the master escrow account. The JTK funds were then disbursed from the master escrow account in the following manner: on April 8, 2016, $29,940.71 was disbursed to JTK; and on April 20, 2016, $3,326.75 was disbursed to the respondent as legal fees. On April 8, 2016, the respondent also transferred $196,089.99 from the master escrow account into the IOLA account. This transfer included another $29,940.71 for JTK. As the respondent had previously disbursed the $29,940.71 on behalf of JTK, the second transfer of the same amount to the IOLA account cleared, at least in part, against other funds in the master escrow account entrusted to the respondent as a fiduciary.
Thereafter, the respondent incorrectly attributed the $29,940.71 deposit into the IOLA account as fiduciary funds related to Bronx Chiropractic. Between April 2016 and May 2018, the respondent disbursed those funds on behalf of Bronx Chiropractic, thereby depleting funds entrusted to him as a fiduciary in connection with other client matters, and causing the balance in the IOLA account to fall below the $29,940.01 he was required to maintain, as follows:
July 21, 2017 $23,119.97
August 21, 2017 $17,844.41
September 22, 2017 $16,920.53
October 23, 2017 $17,700.15
November 21, 2017 $12,456.56
December 21, 2017 $10,536.75
January 23, 2018 $10,665.08
February 22, 2018 $24,377.18
March 16, 2018 $20,102.71
April 20, 2018 $ 3,013.35
May 21, 2018 $ 1,103.35
Charge two alleges that the respondent, in addition to the factual specifications as contained in charge one, failed to reconcile his attorney trust accounts for the period between April 2016 and May 2018, and in view thereof, engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
Charge three alleges that the respondent, based upon the allegations as contained in charges one and two, engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
Hearing Evidence 
The respondent testified that he primarily practices in the area of no-fault collection work, representing medical providers seeking payments from insurance companies. His firm typically files approximately 8,000 to 10,000 no-fault matters per year. The no-fault work generates, on average, approximately 600 to 700 deposits into the accounts per week, and 30 to 50 disbursements from the accounts on a biweekly basis.
Concerning the master escrow account deficiency, the respondent maintains that it was the product of a bookkeeping mistake. Specifically, in April 2016 there was an initial question as to the JTK funds, and as such, the intention was not to transfer the $29,940.71 from the subaccount to the master escrow account until the issue had been resolved. However, the $29,940.71 was transferred to the master escrow account and disbursed to the client and the respondent for legal fees. On the same day, a second transfer for JTK of $29,940.71 was made as part of a larger aggregate transfer from the master escrow account to the IOLA account. To compound this error, following the transfer to the IOLA account, the $29,940.71 was misallocated as funds to be held on [*3]behalf of another client, Bronx Chiropractic. As such, the funds were subsequently disbursed on behalf of Bronx Chiropractic.
The respondent averred that the errant transfer occurred during a period when he was transitioning from his own firm to a law partnership with another attorney. He explained that at that time he had opened new accounts at a separate bank for the new firm and ceased using the Citibank accounts. Given this, the firm stopped its daily monitoring of the Citibank accounts and the errors went undetected.
To avoid a reoccurrence of the master escrow account errors, the respondent has instituted remedial measures, including no longer making aggregate transfers, and instead, individually transferring a client's funds from their subaccount to the master escrow account, and having disbursements reviewed by at least two people. Additionally, the respondent reports now of conducting internal audits on a "month[ly] or regular basis," and every six months by an "outside auditor." The respondent has also taken continuing legal education courses on accounting.
Findings and Conclusion 
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.
In determining an appropriate measure of discipline, the respondent requests that the Court, inter alia, consider the inadvertent nature of the misconduct; that no client suffered pecuniary loss; his remorse; his cooperation with the Grievance Committee's investigation; the remedial measures taken; his acceptance of responsibility for his conduct; and the character evidence presented. Notwithstanding the mitigation advanced, we find that the respondent did not adhere to his fiduciary duties by failing to properly reconcile the master escrow account, which resulted in the errant transfer and the improper disbursement for Bronx Chiropractic remaining undetected for more than two years.
Under the circumstances of this case, the respondent is publicly censured.
LASALLE, P.J., DILLON, DUFFY, BARROS and BRATHWAITE NELSON, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the report of the Special Referee is granted; and it is further,
ORDERED that the respondent, Steven Ira Super, is publicly censured for his professional misconduct.
ENTER:
Maria T. Fasulo
Clerk of the Court